IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DENZEL TRAMEL SWINTON,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPRESS IN AND OUT OF COURT IDENTIFICATION<br><br>Case No. 2:22-CR-121-TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant's Motion to Suppress In and Out of Court Identification. The Court conducted a hearing on October 25, 2022, to hear evidence on the Motion. Following the hearing, the Court issued an oral ruling denying the Motion for the reasons explained in detail herein.

I. BACKGROUND

The facts described in the Parties' briefing and supported at the hearing are as follows. On March 30, 2022, Mr. Colin Prim was sitting in his car in a parking lot when a man, later identified as Defendant, entered the vehicle next to Mr. Prim's vehicle. As the man entered his vehicle, he opened the door to his vehicle in a manner that caused the door to hit Mr. Prim's car. Mr. Prim rolled his window down to view any damage to his car and he and the man had a brief discussion. Their discussion quickly turned to the subject of a handgun that was sitting in Mr. Prim's vehicle. Shortly after acknowledging the gun, the man pulled out a different handgun, pointed it at Mr. Prim, and took Mr. Prim's handgun. The man then got into his car and drove away. During this interaction, the man's face below his nose was covered.

Mr. Prim followed the man for a time and called 911 to report the robbery. Mr. Prim described the man as a black male with a bald head, fairly skinny, wearing a gray shirt and jeans, and driving a silver Chrysler 200 with temporary tags. He also provided police with the man's direction of travel. Approximately 15 minutes after the 911 call, a Murry Police Officer apprehended Defendant who matched the physical description provided by Mr. Prim. Defendant was driving a vehicle that matched the vehicle description provided by Mr. Prim and a handgun was located in Defendant's vehicle that matched the description of the stolen handgun provided by Mr. Prim. Defendant was arrested 5 to 6 miles away from the location of the incident.

Meanwhile, Officer Huntington responded to the scene of the robbery where Mr. Prim had returned. Officer Huntington viewed Mr. Prim's in-car-camera security footage, which provided audio and some visual depiction of the interaction between Mr. Prim and the man, and took statements from Mr. Prim regarding the incident. Sometime during this interaction, Officer Huntington learned that other officers had apprehended a suspect and informed Mr. Prim that police may have already caught the man who robbed him. Officer Huntington requested a copy of the photo of the suspect from and received a photo of the Defendant seated in the back of a squad car wearing sunglasses with his hands handcuffed behind his back.  He also sent Officer Huntington a photo of the handgun that was inside Defendant's vehicle.

Officer Huntington showed Mr. Prim the photo of Defendant and asked him if the man looked familiar. Mr. Prim viewed the photo directly on Officer Huntington's cell phone and stated with confidence, "That's him." Immediately after, Officer Huntington showed Mr. Prim the photo of the gun found in Defendant's car and asked Mr. Prim to confirm that it was Mr. Prim's stolen gun. Mr. Prim responded affirmatively.

Defendant argues that the identification provided by Mr. Prim "was the result of an unduly suggestive show-up and that it is unreliable under the totality of the circumstances in this case."[1] Therefore, Defendant argues the admission of this evidence would violate due process.

## II.     ANAYLSIS

To amount to a due process violation, a photo array "must be 'so unnecessarily suggestive that it is conducive to irreparable mistaken identification.'"[2] To determine if this standard is met, courts conduct a two-part inquiry. "[F]irst, the court must determine whether the photo array was impermissibly suggestive, and if it is found to be so, then the court must decide whether the identifications were nevertheless reliable in view of the totality of the circumstances."[3] "These two prongs must be analyzed separately, and it is only necessary to reach the second prong if the court first determines that the array was impermissibly suggestive."[4]

First, to determine if the photo array was impermissibly suggestive, courts consider a number of factors including, "the number of photographs in the array, the way that the police present the array, and the details of the photographs."[5] "Though [courts] consider the number of photographs in the array, this factor goes to the 'weight given to other alleged problems or

---

[1] Docket No. 41 at 3.

[2] *United States v. Worku*, 800 F.3d 1195, 1203 (10th Cir. 2015) (quoting *Grubbs v. Hannigan,* 982 F.2d 1483, 1489–90 (10th Cir. 1993)); *see also Manson v. Brathwaite,* 432 U.S. 98, 114 (1977) ("[R]eliability is the linchpin in determining the admissibility of identification testimony.")).

[3] *United States v. Sanchez*, 24 F.3d 1259, 1261–62 (10th Cir. 1994).

[4] *Id*. at 1262.

[5] *United States v. Kamahele*, 748 F.3d 984, 1019 (10th Cir. 2014).

irregularities in an array'; the number is not itself a substantive factor."[6] But "[t]he lower the number of photographs used by officers in a photo array, the closer the array must be scrutinized for suggestive irregularities."[7]

Here, Officer Huntington showed Mr. Prim only one photo and asked him if the man in the photo looked familiar. Courts look unfavorably on identifications where the witness is shown only one suspect for identification—also known as a "show-up" identification.[8] "Accordingly, such procedures 'should be employed only if compelled by extraordinary circumstances.'"[9] In *Stovall v. Denno*, the Supreme Court found such extraordinary circumstances where the witness was confined to a hospital bed and "was the only person in the world who could possibly exonerate" the defendant, "[n]o one knew how long [the witness] might live" and, therefore, "the usual police station line-up . . . was out of the question."[10] No evidence before the court suggests that such "extraordinary circumstances" were present in this case. While Mr. Prim was the sole witness who could identify the suspect, the same pressing limitations present in *Stoval* were not present here. Officers had sufficient evidence to arrest Defendant without Mr. Prim's identification. Mr. Prim was not confined to any particular place and had no other limitations known to the Court that would prevent him from being available at a later time to identify the Defendant in a photo array or line up. The identification was therefore impermissibly suggestive.

---

[6] *Id.* (quoting *Sanchez*, 24 F.3d at 1262).

[7] *Sanchez*, 24 F.3d at 1263.

[8] *Stovall v. Denno*, 388 U.S. 293, 302 (1967) ("The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup has been widely condemned."); *United States v. Natalini*, 42 F. App'x 122, 127 (10th Cir. 2002) (stating that "in general, show-up identifications … are less than ideal").

[9] *Natalini*, 42 F. App'x at 127 (quoting *United States v. Newman*, 144 F.3d 531, 535 (7th Cir.1998)).

[10] *Stovall*, 388 U.S. at 302.

The Court's consideration of the "way police presented the photo" factor provides further support for a finding of impermissible suggestiveness. In *Grubbs v. Hannigan*, the Tenth Circuit found that the law enforcement officers' choice to inform the witness that they had a suspect in custody prior to showing the witness the photo array, which caused the witness to "assume that one of the individuals in the lineup was the suspect," compounded the suggestiveness of the photo array.[11] The same is true here. Officer Huntington showed Mr. Prim the photo of Defendant after informing him that other officers had detained a suspect.

The suggestiveness of the identification is also supported by the final factor—the details of the photograph. The photo shown to Mr. Prim depicted Defendant with his hands behind his back in handcuffs. An image of a suspect that shows the suspect is already in law enforcement custody is unduly suggestive.

Because the Court finds that the photo array was impermissibly suggestive, the Court must next determine "whether the identification is nevertheless reliable under the totality of the circumstances."[12]

> For reliability, the pertinent factors include: (1) the opportunity of the witness to view the suspect during the crime, (2) the witness's level of attention during the crime, (3) the accuracy of the witness's prior description of the suspect, (4) the level of certainty the witness demonstrated during the array, and (5) the time lapse between the crime and the array.[13]

Upon consideration of each of the factors, the Court finds that Mr. Prim's identification was sufficiently reliable. First, Mr. Prim was only three to five feet away from the suspect outside during daylight hours. While the suspect's face below his nose was covered during the

---

[11] *Grubs*, 982 F.2d at 1490.

[12] *United States v. Franklin,* 195 F. App'x 730, 734 (10th Cir. 2006).

[13] *Kamahele*, 748 F.3d at 1020–21.

interaction, nothing else obstructed Mr. Prim's view of the suspect during their interaction. Further the interaction involved a conversation with the suspect that lasted at least a minute. Mr. Prim therefore had a good opportunity to clearly view the suspect during the crime.

Second, the in-car-camera video presented at the hearing showed Mr. Prim looking at the suspect while they were speaking. While there were moments during the encounter where Mr. Prim was looking at the handgun, Mr. Prim was focused on the suspect during the majority of the interaction. Mr. Prim observed the suspect both before and after being subject to duress.

Third, Mr. Prim provided a description of the suspect, his car, and the direction of travel. There were no inconsistencies in Mr. Prim's descriptions throughout his discussion with law enforcement, and the descriptions provided matched Defendant's appearance, vehicle, and driving direction when he was detained by law enforcement.

Fourth, there was only a matter of minutes between when the crime occurred and when Mr. Prim was shown the photo of Defendant and identified him as the suspect.

Finally, there is nothing to suggest that Mr. Prim was less than confident in his identification. When Officer Huntington showed Mr. Prim the photo of Defendant, he stated, "That's him" without hesitation or question. Because each of the above factors weigh in favor of reliability, the Court finds Mr. Prim's identification to be sufficiently reliable. The Tenth Circuit has found a witness's identification to be sufficiently reliable under less convincing circumstances.[14]

---

[14] *See id.* at 1021 (finding the witnesses' identification to be reliable where the witnesses were within eight feet of the robber and able to describe the robber with detail, even though they had only a minute to observe him, and viewed the photo array about three months after the robbery took place).

At the hearing the Defendant solicited testimony highlighting that the photo shown to Mr. Prim was a digital photo on a cell phone and therefore relatively small. Further, Defendant highlighted that the Defendant was wearing sunglasses in the photo. While such circumstances are not ideal for an identification, the Court does not believe these factors to be so significant as to undercut the reliability of Mr. Prim's identification. The Court, therefore, finds that the government has met its burden in demonstrating admissibility of Mr. Prim's identification of Defendant.[15]

### III.   CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Suppress (Docket No. 41) is DENIED.

DATED this 31st day of October, 2022.

BY THE COURT:

Ted Stewart
United States District Judge

---

[15] *United States v. Mikolon*, 719 F.3d 1184, 1189 (10th Cir. 2013) (quoting *Missouri v. Seibert*, 542 U.S. 600, 608 n.1 (2004)) ("[U]pon a motion to suppress, the 'burden of showing admissibility rests, of course, on the prosecution.'").